UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

99-00509-CR-HIGHSMITH
Case No. _____
MAGISTRATE JUDGE
GARBER

18 USC §1001(a)(3)
42 USC § 6928(d)(2)(A)
33 USC 1311(a), 1319(c)(2)(A), 1342

UNITED STATES OF AMERICA, )
)
)
v. )
)
ROYAL CARIBBEAN CRUISES, LTD., )
)
Defendant. )
_____ )

## INFORMATION

The United States Attorney charges that:

### COUNT I

#### Background

At all times material hereto:

1. Defendant ROYAL CARIBBEAN CRUISES, LTD. ("RCCL") was a corporation, incorporated in Liberia, with its corporate headquarters in Miami, Florida. RCCL was originally founded in 1967 for the purpose of operating cruise ships in the Caribbean while using U.S. ports. RCCL operated and controlled a fleet of cruise ships that included the vessels *Sovereign of the*

*Seas, Majesty of the Seas, Grandeur of the Seas, Song of Norway, Legend of the Seas, Sun Viking* and *Nordic Empress*. These RCCL vessels were inspected regularly by the U.S. Coast Guard and utilized various U.S. home ports, including Miami, Florida. The RCCL vessels were variously of Norwegian or Liberian registry.

2.  Each RCCL vessel had an Engine Department headed by officers usually referred to as Chief Engineer, Chief Engineer, Jr., and First Engineer. There were usually at least three Second Engineers who were each responsible for serving as Duty Engineer during two four-hour shifts each day in the engine control room. At least one of the Second Engineers was assigned responsibilities in the engine room that included responsibility for the Oil Water Separator, a required pollution prevention device. Assisting each Second Engineer was a Motorman who carried out various tasks in the engine room. Each Engine Department also employed various other workers.

3.  The RCCL vessels which utilized Miami as their home port, or which called at the port of Miami, typically sailed routes which included stops in the Commonwealth of the Bahamas and other destinations throughout the islands of the Caribbean.

4.  Large vessels, such as the cruise ships identified in Paragraph 1, above, produce quantities of waste oil as a result of the operation of machinery in the engine room. Some of this waste oil, along with water and other liquids, accumulates in the bottom or "bilges" of the vessel. Typically, this waste liquid drains into small compartments set into the bottom of the engine room where it is collected and run through various processes designed to separate the oil and other wastes from the water. These processes include settling tanks and an Oil Water Separator (also known as a Bilge Water Separator), pollution prevention equipment designed to remove or separate out oil. An Oil Water Separator requires maintenance, cleaning, and the replacement of its filters and

membranes on a regular basis. Bilge waste containing less than fifteen parts per million oil may be discharged overboard through an Oil Water Separator. The oil removed from the bilge waste, along with other waste oils from the ship, is stored in a sludge tank. On some ships, it may be possible to burn some portion of this sludge as fuel for boilers, or the oil contaminated bilge waste and other waste oils, including sludge, may be unloaded while the vessel is in port and properly disposed of on shore.

## The Federal Water Pollution Control Act
### [Clean Water Act]

5. The Act to Prevent Pollution From Ships (APPS) authorizes the Coast Guard to inspect vessels to determine whether vessels are operating in accordance with APPS regulations and certain international agreements addressing pollution of the marine environment. 33 U.S.C. § 1907(c); 33 CFR 151.23(c). Regulations promulgated pursuant to APPS require certain specified operations be reflected in an Oil Record Book on each occasion they occur, including discharges of oil from the vessel. 33 CFR 151.25.

6. It was permissible to discharge through an Oil Water Separator bilge waste containing less than fifteen parts per million oil. 33 CFR § 151.10.

7. The RCCL vessels identified, infra, including *Grandeur of the Seas*, were in excess of 400 gross tons.

8. It was a requirement that ships of more than 400 gross tons maintain an "Oil Record Book" in which transfers of oil, including disposal of sludge and discharge overboard or disposal otherwise of bilge water that had accumulated in machinery spaces were fully recorded. 33 CFR § 151.25(d). The master of the ship was required to sign every completed page of the Oil Record

Book. 33 CFR § 151.25(h).

9. The U.S. Coast Guard was charged with enforcing U.S. law and was empowered to board vessels. 14 U.S.C. § 89. In conducting inspections, U.S. Coast Guard personnel rely upon a ship's documents and records required to be maintained by regulation.

10. On or about December 4, 1996, in the Port of Miami, at Miami-Dade County, in the Southern District of Florida, the defendant,

**ROYAL CARIBBEAN CRUISES, LTD.,**

knowingly and willfully used a false writing in a matter within the jurisdiction of the executive branch of the government of the United States, that is, the United States Coast Guard, during a pollution prevention compliance boarding, knowing the same to contain materially false, fictitious and fraudulent entries, to wit, an Oil Record book for the cruise ship *Grandeur of the Seas*, that falsely represented that all overboard discharges of oil contaminated bilge waste occurred only after treatment of the bilge waste through a required pollution prevention device, that is, an Oil Water Separator, and which failed to record the discharge of oil contaminated bilge waste without the use of the Oil Water Separator.

All in violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT II

### Background

1. At all times material hereto, the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. §6901 et seq., and the regulations promulgated pursuant to RCRA, prohibited the storage and disposal of hazardous waste without a permit.

2.	In enacting RCRA, Congress specifically found that inadequate controls on hazardous waste management will result in substantial risks to human health and the environment. 42 U.S.C. §6901(b)(5).

3.	At all times relevant to this Count, Royal Caribbean Cruises, Ltd., (RCCL) maintained pier-side facilities at the Port of Miami, including an area known as Pod 4, for the purpose of storing miscellaneous materials related to the operation and maintenance of its cruise ships.

4.	No permit was issued under RCRA that would allow the storage of hazardous waste at the pier-side facilities operated by RCCL at the Port of Miami.

5.	"Solid" waste materials that are specifically identified in federal regulations (a "listed" waste) and other wastes which exhibit characteristics of ignitability, corrosivity, reactivity, or toxicity (a "characteristic" waste) are hazardous wastes for the purpose of RCRA. Title 40, Code of Federal Regulations, Sections 261.20-24, 261.3(a)(2), 261.30-33.

6.	Beginning on a date unknown to the United States Attorney, but at least as early as January 1, 1997 and continuing until on or about February 23, 1998, at the Port of Miami, Miami-Dade County, in the Southern District of Florida, the defendant,

**ROYAL CARIBBEAN CRUISES, LTD.,**

did knowingly store and cause to be stored, drums and other containers holding hazardous wastes in a facility which did not have a permit issued pursuant to RCRA to store hazardous waste.

All in violation of Title 42, United States Code, Section 6928(d)(2)(A).

## COUNT III

From on or about January 1, 1995 through on or about December 31, 1995, within Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**ROYAL CARIBBEAN CRUISES, LTD.,**

knowingly discharged and caused the discharge of a pollutant, that is, wastewater contaminated with pollutants, including waste from ship-board dry cleaning operations (which included perchloroethylene or PERC) and photographic chemicals (which included the toxic heavy metal silver), into inland waters and navigable waters of the United States, including the Port of Miami, without a permit, from RCCL vessels, including *Sovereign of the Seas*, *Majesty of the Seas*, *Song of Norway*, *Legend of the Seas*, *Sun Viking*, and *Nordic Empress*.

All in violation of Title 33, United States Code, Sections 1311(a), 1319(c)(2)(A) and 1342.

## COUNT IV

From on or about February 1, 1996 through on or about March 31, 1996, within Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**ROYAL CARIBBEAN CRUISES, LTD.,**

knowingly discharged and caused the discharge of a pollutant, that is, wastewater contaminated with pollutants, including waste from ship-board dry cleaning operations (which included perchloroethylene or PERC) and photographic chemicals (which included the toxic heavy metal silver), into inland waters and navigable waters of the United States,

including the Port of Miami, without a permit, from RCCL vessels, including *Sovereign of the Seas*, *Majesty of the Seas*, and *Nordic Empress*.

All in violation of Title 33, United States Code, Sections 1311(a), 1319(c)(2)(A) and 1342.

_____
THOMAS E. SCOTT
UNITED STATES ATTORNEY

_____
THOMAS WATTS-FITZGERALD
ASSISTANT UNITED STATES ATTORNEY

_____
RICHARD A. UDELL
TRIAL ATTORNEY
ENVIRONMENTAL CRIMES SECTION
UNITED STATES DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA    CASE NO. 99-00509-CR-HIGHSMITH
v.                          CERTIFICATE OF TRIAL ATTORNEY* MAGISTRATE JUDGE
                                                          GARBER
ROYAL CARIBBEAN CRUISES, LTD.
_____    **Superseding Case Information:**

**Court Division:** (Select One)    New Defendant(s)          Yes ___  No ___
                                    Number of New Defendants  ___
 X  Miami   ___ Key West            Total number of counts    ___
___ FTL     ___ WPB ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:       (Yes or No) __NO__
   List language and/or dialect _____

4. This case will take __1 (PLEA)__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                  (Check only one)

   I    0 to 5 days      __X__       Petty      ___
   II   6 to 10 days     ___         Minor      ___
   III  11 to 20 days    ___         Misdem.    ___
   IV   21 to 60 days    ___         Felony     __X__
   V    61 days and over ___

6. Has this case been previously filed in this District Court? (Yes or No) __Yes - Related Case__
   If yes:
   Judge: __MIDDLEBROOKS__           Case No. 98-0103-Cr-MIDDLEBROOKS
   (Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) __No__
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No) __NO__

7. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? __X__ Yes ___ No  If yes, was it pending in the Central Region? ___ Yes __X__ No

THOMAS WATTS-FITZGERALD
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0273538

*Penalty Sheet(s) attached                                        REV.4/7/99

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

99 - 00509 - CR-HIGHSMITH

MAGISTRATE JUDGE
GARBER

Defendant's Name: __ROYAL CARIBBEAN CRUISES, LTD.__ Case No.: ____

Count #: I
Title 18, U.S.C., §1001
Using a material false document

*Max. Penalty: $500,000 fine or twice gain or loss and 5 years probation

Count #: II
Title 42, U.S.C., §6928(d)(2)(A)

Storing hazardous waste without a permit

*Max. Penalty: $500,000 fine or twice gain or loss and 5 years probation

Count #: III
Title 33, U.S.C., §1311(a), 1319(c)(2)(A) and 1342

Knowingly discharging pollutants into U.S. waters without a permit

*Max. Penalty: $ 500,000 fine or twice gain or loss and 5 years probation

Count #: IV
Title 33, U.S.C., §1311(a), 1319(c)(2)(A) and 1342

Knowingly discharging pollutants into U.S. waters

*Max. Penalty: $500,000 fine or twice gain or loss and 5 years probation

Count #:

*Max. Penalty:
Count #

*Max. Penalty:
Count #

*Max. Penalty:

**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96